Filed 8/8/14  Castillo v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| OMAR CASTILLO, | |
| Petitioner, | E060254 |
| v. | (Super.Ct.No. INC1204305) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THELMA CLARK, et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  John G. Evans, Judge.

Petition is granted in part with directions.

Harrington, Foxx, Dubrow & Canter, Dale B. Goldfarb, Edward R. Leonard,

Zakiya N. Glass, John D. Tullis, and Nikhil P. Pole for Petitioner.

No appearance for Respondent.

1

El Dabe Law Firm and S. Edmond El Dabe; The Homampour Law Firm and Arash Homampour for Real Parties in Interest.

In this matter we issued an order to show cause to examine what appeared to be significant legal and procedural issues. However, our review of the complete record leads us to the reluctant conclusion that the matter must be returned to the trial court. We will attempt to provide some general guidance, however.

STATEMENT OF FACTS

This is a wrongful death action arising out of a collision between a big rig truck and a passenger vehicle driven by plaintiffs' decedent. Among plaintiffs' theories of liability are (1) that defendant and petitioner Omar Castillo (Castillo) was talking on a cell phone at the time of the accident; and (2) that he had actually been awake at times when the truck log showed him to have been sleeping or resting, and was therefore sleep-deprived at the time of the crash.

Accordingly, plaintiffs began to make efforts to obtain the records of the cellular phone in Castillo's possession at the time. On July 24, 2012, they served a request for production of documents which included a request for "[t]he cellular telephone bill for the date of the incident . . . for any cellular telephone of which responding party was in possession on the date of the incident." Castillo's response was that he did not have any such documents. Plaintiffs apparently accepted this response, at least for the time being.

2

After Castillo testified at his deposition that he had indeed been using his cell phone at the time of the accident, plaintiffs sent a second set of requests asking for "All billing statements covering the time period March 5, 2012 to March 20, 2012 for any wireless communication devices owned or used by Omar Castillo during that time period," as well as any documents showing the telephone numbers that Castillo had called or from which he had received calls. This was served on February 19, 2013. This time, in response to virtually the same inquiry to which he had previously responded that he had no such documents, Castillo objected that[1] the request invaded his privacy rights and was irrelevant because he'd already admitted at his deposition that he was on the phone when the crash occurred. No claim was made that he did not have access to the records.

Shortly thereafter, on a date not clear from the record, plaintiffs served a subpoena on the cell phone provider. Castillo then on April 25, 2013, filed a motion to quash citing Code of Civil Procedure section 1985.3, subdivision (f), which provides that "[a] subpoena duces tecum for personal records maintained by a telephone corporation which is a public utility, as defined in Section 216 of the Public Utilities Code, shall not be valid or effective unless it includes a consent to release, signed by the

---

[1] He also raised boilerplate, and completely meritless, objections that the requests were "vague and ambiguous," "overbroad," "[sought] irrelevant information," and were "burdensome and harassing."

3

consumer whose records are requested . . . ."**2** Castillo also now averred, via declaration, that the cell phone in question was on his "wife's account."**3**

A week or so later, on May 2, 2013, Castillo filed a motion for protective order generally raising privacy issues and demanding sanctions. By this time—on or about May 1—plaintiffs had served a deposition subpoena on Maria Castillo (Maria), Castillo's wife. *Castillo* himself then filed an "objection" to the "notice of deposition" (actually subpoena). Maria did not appear.**4**

While Castillo's motion was pending, plaintiffs in return filed a motion to have Castillo and his wife ordered to sign consents for the release of the records. (See Code Civ. Proc., § 1985.3, cited above.) This was accompanied by a motion to compel further responses to the requests for documentation about the cell phone usage. As part of these motions, plaintiffs included a letter from Castillo's attorneys in which the latter claimed

---

**2** The quoted sentence goes on to finish "as required by Section 2891 of the Public Utilities Code." That statute applies to "residential subscriber[s]" and appears to be generally intended to prohibit the sharing or selling of information which could be used in marketing.

**3** Interestingly—to say the least—about a month earlier, on April 12, 2013, Castillo's attorney had sent a letter to the cell phone provider objecting to the subpoena and asserting that a signed release was required and "[n]o such release has been requested or provided." The implication is that it was Castillo's consent that would be required. The record also includes the provider's letter to Maria informing her that it "is required to comply with the subpoena by providing the requested records . . . ."

**4** Plaintiffs later issued two appearance subpoenas trying to get Maria to appear at hearings for the motions to compel consent and the ex parte hearing for sanctions. (See *infra*.) Neither was obeyed.

4

that they also represented Maria, and demanded that plaintiffs' attorney not "continue to pursue her."[5]

At the hearing on June 3, 2013, the trial court began by saying "[t]he plaintiff is going to get this information through me one way or another . . . unless you're willing to admit liability in this case." Castillo's attorney indicated that he would not do so. On June 5, 2013, the trial court ruled on one or more of the various requests by granting Castillo's motion "in part"[6] but requiring Castillo to produce the phone records for a two-day period prior to the accident. On or about the same time the court also *granted* Castillo's request to quash the subpoena served on Maria. Again, the order does not disclose reasons, but presumably the trial court accepted Castillo's argument based on Code of Civil Procedure section 1985.3.

A few weeks later, as the trial court continued to make its way through the filings, it *granted* plaintiffs' motion to compel and directed Castillo to produce cell phone record information corresponding to that referenced in the June 5 order.

Having therefore essentially lost in his efforts to keep the information away from plaintiffs (other than having succeeded in having the subpoena for the records quashed),

---

[5] If, as Castillo consistently argues, Maria was acting out of enmity towards him and was trying to get him in trouble, how on earth could counsel represent both of them?

[6] The order is not otherwise informative; apparently the "in part" refers to the trial court's restriction on the time period from which the records were required to be produced.

on or about July 18 Castillo executed a declaration[7] stating in essence that his wife would not give him the "passcode" for the cell phone account and therefore he could not get the information demanded. This in turn led plaintiffs to file[8] an ex parte application for "terminating, issue and/or evidence sanctions" as well as monetary sanctions. Castillo, of course, opposed this, reiterating that his wife refused to allow him access to the records.

A few weeks later, on August 16, 2013, Castillo filed his own motion for sanctions, alleging that plaintiffs' counsel "continuously acted improperly, lied to defense counsel, failed to act with knowledge of applicable law, and intentionally and unnecessarily drove up the costs incurred by Defendant . . . has unequivocally conflicted with established, California law through the following: attempting to obtain discovery through improper means, disregarding the spousal privileges, serving civil subpoenas for Defendant's wife ("Maria Castillo") . . . filing unmeritorious motions and seeking remedies that are clearly not allowed by law, failing to provide common courtesy . . . failing to stipulate to a continuance . . . [¶] . . . has acted with complete disregard of the law and has disrespected defense counsel through his inappropriate,

---

[7] The copy in the record is not file-stamped.

[8] Again, the record copy is not file-stamped.

improper conduct."[9]  He also filed opposition to plaintiffs' motion, with another, additional request for sanctions.[10]

Plaintiffs then filed a reply and amended reply to Castillo's opposition to their motion for sanctions, and opposition to Castillo's motion.  Castillo filed a reply in support of his motion, as well as evidentiary objections.

The hearing took place on October 3, 2013.  The trial court's state of mind by this time may be gleaned from its initial comment:  "My nature is to ask this question first:  If I impose sanctions against both counsel, let's say for example, in the same amount of $2500, which would be an amount to an offset, would I still be required to report both of you to the State Bar?"  Counsel for plaintiffs stressed the need to have Maria sign a consent or authorization, commenting that Maria had not responded to the subpoenas.  Counsel for Castillo argued that if the records were not presented, plaintiffs could ask for an instruction that the absence of evidence should be construed against Castillo.  (See Evid. Code, § 412.)[11]

---

[9]  This diatribe overlooks the fact that plaintiffs' efforts had in fact largely succeeded.

[10]  If it needed inflating, the record appears to contain two copies of this opposition.

[11]  "If weaker and less satisfactory evidence is offered"—that is, Castillo's testimony concerning the extent of his cell phone usage during the day or days before the accident—"when it was within the power of the party to produce stronger and more satisfactory evidence"—that is, the actual records—"the evidence offered should be viewed with distrust."

After brief argument, the trial court took the matter under submission and subsequently issued an order stating somewhat obliquely that "In order to prevent the disclosure of confidential information to wit:  defendant and his wife's telephone records the court imposes an evidentiary sanction against Omar Castillo establishing his negligence for causing the accident involving plaintiff [decedent].  This evidentiary sanction does not preclude defendant from offering evidence tending to prove comparative negligence on behalf of plaintiff [i.e., decedent] or from offering evidence related to the nature and extent of plaintiff's [*sic*] damages."  Sanctions were denied because the court found "substantial justification or other circumstances" that made the imposition of sanctions unjust.

## DISCUSSION

This petition followed.  Castillo argues that the sanction was improper because he was legally unable to obtain the records; that Maria had a privilege not to testify against him; that the court did not make necessary findings; and that the evidentiary sanction imposed was excessive.  The main thrust of his argument is that he cannot be sanctioned for not producing evidence not obtainable by him.

The immediately apparent, and appealing, answer to this is that there is every reason to suspect, or even believe, that the evidence *is* available to him and that Maria's supposed recalcitrance is a sham.  First, Castillo never asserted that his wife was refusing to give him access to the records until his other objections (such as privacy and irrelevance) had been rejected by the court.  Second, Maria has (as far as our review of

8

the record discloses) never personally expressed her refusal to consent (or, for that matter, her exercise of the marital privilege on which Castillo also relies). Certainly she has never appeared before the court and she remains a shadowy, but indisputably critical, player in the game. Third, the peculiar circumstance that Castillo's counsel purports to also represent Maria while simultaneously claiming that Maria's "refusals" stem from hostility towards Castillo, and despite the fact that Maria's recalcitrance (if she in fact does not wish to disclose the records) is, as the trial court's ruling demonstrates, directly prejudicial towards Castillo.

We also note, without further comment, that Maria's purported refusal to provide the passcode for the account raises interesting but unaddressed issues concerning the fiduciary relations between spouses and the spousal obligation to allow the other spouse access to records and information concerning community contracts.[12] (Fam. Code, §§ 720, 721) We also note that Castillo's attempt to assert the spousal privilege of Evidence Code sections 970 and 971 is wholly misplaced, as the privilege belongs to the witness spouse (Maria) and he has no standing to raise it on her behalf. (See *People v. McWhorter* (2009) 47 Cal.4th 318, 374.)

The difficulty we have with a simple upholding of the trial court's order as a proper exercise of its power to punish bad faith or meretricious behavior is found in the

---

[12] Maria's potential legal liability to Castillo should her refusal to disclose the records lead to a judgment against Castillo also suggests the impropriety of joint representation.

9

trial court's minute order. As we quoted above, the trial court declined to award sanctions in plaintiffs' favor based on the apparent finding that Castillo had acted with "substantial justification" or that "other circumstances" made the prospect of sanctions unjust.

This is unfortunately wholly inconsistent with the position that we would gladly find that the court took—that is, that Castillo was acting in clear bad faith in blocking access to the telephone records through a trumped-up refusal by Maria to cooperate and his resulting hand-wringing helplessness.[13] The court could not have found "substantial justification" or other extenuating circumstances weighing against sanctions if it believed that Castillo in fact *could* get the records if he wished to do so. But on the other hand, the court abused its discretion in imposing a drastic evidentiary sanction if it did *not* believe that Castillo acted in bad faith.[14]

Hence, while we cannot say that the ruling was erroneous, we cannot uphold it. Accordingly, the petition for writ of mandate is granted. We will issue the writ directing the superior court to re-open proceedings and to reconsider its order in light of the above

---

[13] We do not address the issue of whether the consent requirements of Code of Civil Procedure section 1985.3 are absolute and create a unique exception to the discoverability of third-party information—an exception which, if immune to judicial review, we would find startling, to say the least. Nor do we address the issue of whether Castillo could properly be sanctioned for encouraging his wife to assert a legal right (if there is such a right) to refuse to allow the account information to be disclosed. Absent factual findings by the trial court, any such discussion is premature.

[14] This point makes it unnecessary for this court to discuss in general the parameters of discretion in imposing discovery sanctions, as well as the argument by Castillo that the specific sanction here was not requested by plaintiffs.

10

comments.  It would also be advisable for the trial court to support its subsequent order with specific factual findings, which are useful to decision-making, and our subsequent review.

## DISPOSITION

The petition for writ of mandate is granted in part with directions.  Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate its order for an issue sanction and its order denying monetary sanctions.  The court is further directed to conduct a new hearing on the underlying motion in accordance with the guidance contained in this opinion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

In the interest of justice, the parties shall bear their own costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
                                                                                    J.

We concur:

RICHLI _____
            Acting P. J.

MILLER _____
                        J.

11